**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| BRANDI STRENGTH and CHRISTINE ABBOTT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CERNER CORPORATION d/b/a ORACLE HEALTH, INC., and INTEGRIS HEALTH, INC.,<br><br>Defendants. | **CASE NO. _____________**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

## CLASS ACTION COMPLAINT

Plaintiffs Brandi Strength and Christine Abbott ("Plaintiffs"), through their attorneys, individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendants, Cerner Corporation d/b/a Oracle Health Inc., ("Oracle Health") and Integris Health, Inc., ("Integris") (together with Oracle Health, "Defendants"). Plaintiffs allege the following on information and belief – except as to their own actions, counsel's investigations, and facts of public record.

## NATURE OF ACTION

1. This Class Action arises from a recent cyberattack resulting in a data breach of sensitive information in the possession and custody and/or control of Defendants (the "Data Breach").

2. Oracle Health is a healthcare software-as-a-service (SaaS) company offering electronic health record and business operations systems to hospitals and healthcare organizations, lost control over its affiliated entity and client's patients' highly sensitive personal information,

including Integris.

3. Integris chose to allow Oracle Health access and control over its patients' highly sensitive personal and health information.

4. On information and belief, the Data Breach occurred as early as January 22, 2025. Following an internal investigation, on information and belief, Defendants learned the Data Breach resulted in unauthorized disclosure, exfiltration, and theft of current and former patients' personally identifying information ("PII") including names, Social Security number as well as personal health information, "(PHI"), including patient medical records, medical record numbers, doctors, diagnosis, medicines, test results, images, care, and treatment. Plaintiffs refer to both PII and PHI collectively as "Private Information."

5. Defendants continue to fail to promptly inform Class Members even though Plaintiffs and thousands of Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

6. Defendants continue to obfuscate the details of the breach as well as the nature of the breach and the threat it posed—how many people were impacted, how the breach happened, and why Defendants delayed for months notification to victims that hackers had gained access to highly sensitive Private Information.

7. Defendants' failure to timely detect and report the Data Breach made patients vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Private Information.

8. Defendants knew or should have known that each victim of the Data Breach

deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII and PHI misuse.

9. In failing to adequately protect Plaintiffs' and the Class's Private Information, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendants violated state and federal law and harmed an unknown number of its current and former patients and prospective patients.

10. Plaintiffs and members of the proposed Class are victims of Defendants' negligence and inadequate cyber security measures. Specifically, Plaintiffs and members of the proposed Class trusted Defendants with their Private Information. But Defendants betrayed that trust. Defendants failed to properly use up-to-date security practices to prevent the Data Breach.

11. Plaintiffs received medical care from Defendant Integris, maintained patient relationships with Integris, and suffered harm as victims of the Data Breach.

12. Accordingly, Plaintiffs, on behalf of themselves and a class of similarly situated individuals, bring this lawsuit seeking injunctive relief, damages, and restitution, together with costs and reasonable attorneys' fees, the calculation of which will be based on information in Defendants' possession.

**PARTIES**

13. Plaintiff Brandi Strength is a natural person and citizen of Oklahoma where she intends to remain.

14. Plaintiff Christine Abbott is a natural person and citizen of Oklahoma where she intends to remain.

15. Defendant, Oracle Health, is a Delaware corporation with its principal place of business located at 8779 Hillcrest Road, Kansas City, Missouri 64138.

16. Defendant, Integris Health, Inc., is an Oklahoma not for profit corporation with its with its principal place of business at 3001 Quail Springs Parkway, Oklahoma City, Oklahoma 73134.

## JURISDICTION & VENUE

17. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and cost. At least one Plaintiff and Defendant are of different states and there are over 100 putative Class members.

18. This Court has personal jurisdiction over Defendants because they are headquartered in Oklahoma, regularly conduct business in Oklahoma and have sufficient minimum contacts in Oklahoma.

19. Venue is proper in this Court because Defendant Integris' principal office is in this District.

## BACKGROUND FACTS

***Oracle Health***

20. Oracle Health is a healthcare software-as-a-service (SaaS) company offering electronic health record and business operations systems to hospitals and healthcare organizations.[1] Oracle Corporation acquired the medical records giant Cerner Corporation for $28.3 billion in 2022,[2] making it the second largest electronic health vendor in the United States, providing these services to over 20 percent of the U.S. hospitals.

21. Oracle Health's services are specialized for oncology related corporations and

---

[1] https://www.oracle.com/health/ (last visited December 26, 2025).
[2] https://www.oracle.com/corporate/; https://www.cnbc.com/2025/03/06/oracles-federal-electronic-health-record-suffered-nation-wide-outage-.html (last visited December 30, 2025).

healthcare providers who manage highly sensitive data. Oracle Health thus must oversee, manage, and protect the Private Information of its clients' consumers.

22. On information and belief, these third-party consumers, including Integris' patients, whose Private Information was collected by Oracle Health do not do any business with Oracle Health.

23. In working with third party consumers' highly sensitive data, Oracle Health advertises that it "has implemented and will maintain technical and organizational measures designed to prevent accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to Services Personal Information."[3]

24. Likewise, Seema Verma, the executive vice president and general manager of Oracle Health and Life Sciences, stated, "Cyberattacks represent an imminent and existential threat to healthcare worldwide" and "[o]ur top priority is helping to keep our customers and their patients safe from the debilitating impacts of cyber-terrorism."[4]

25. Despite recognizing its duty to do so, on information and belief, Oracle Health has not implemented reasonable cybersecurity safeguards or policies to protect its patients' Private Information or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, Oracle Health left significant vulnerabilities in its storage of Plaintiffs' and the Class's Private Information for cybercriminals to exploit and gain access to patients' Private Information.

***Integris Health, Inc.***

---

[3] https://www.oracle.com/legal/privacy/services-privacy-policy/#1-4 (last visited December 17, 2025).

[4] Oracle Protect Healthcare Customers Against Cyberattacks (published April 23, 2024) https://www.oracle.com/news/announcement/oracle-protects-healthcare-customers-against-cyberattacks-2024-04-23/ (last visited December 17, 2025).

26. Integris is a private not-for-profit hospital that boasts itself as "the state's largest not-for-profit and Oklahoma-owned health care systems with hospitals, specialty clinics, and family care practices and centers of excellence."[5]

27. As part of its business, Integris receives and maintains the Private Information of thousands of current and former patients. In doing so, Integris implicitly and explicitly promises to safeguard their Private Information.

28. In collecting and maintaining its current and former patients' Private Information, Integris agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiffs and Class Members themselves took reasonable steps to secure their Private Information.

29. Specifically, Integris acknowledges in their Privacy Policy that "We are required by law to maintain the privacy and security of your Health Information."[6]

30. Despite recognizing its duty to do so, on information and belief, Integris has not implemented reasonable cybersecurity safeguards or policies to protect its patients' Private Information or supervised its IT or data security agents and employees, including Oracle Health, to prevent, detect, and stop breaches of its systems. As a result, Integris left significant vulnerabilities in its storage of Plaintiffs' and the Class's Private Information for cybercriminals to exploit and gain access to patients' Private Information.

***The Data Breach***

31. Plaintiff Brandi Strength is an Integris patient. As a condition of treatment with Integris, Plaintiff Strength provided Integris with her Private Information. Integris used that Private

[5] https://integrishealth.org/about-integris (last visited January 18, 2026).
[6] https://integrishealth.org/notice-of-privacy-practices (last visited January 18, 2026).

Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to obtain treatment and care.

32. Plaintiff Christine Abbott is an Integris patient. As a condition of treatment with Integris, Plaintiff Abbott provided Integris with her Private Information. Integris used that Private Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to obtain treatment and care.

33. Integris provided Oracle Health with Plaintiffs' Private Information. Thus, Oracle Health was granted access to and custody of Plaintiffs' Private Information.

34. Defendants collect and maintain patients' Private Information in their computer systems.

35. In collecting and maintaining the Private Information, Defendants implicitly agree that they will safeguard the data using reasonable means according to their internal policies and federal law.

36. According to Integris's notice to Plaintiff Brandi Strength, its former contracted EHR vendor, Oracle Health, informed Integris on November 3, 2025, that Integris' current and former patients may have been affected by a Data Breach on Oracle Health's "legacy" systems as early as January 22, 2025.[7]

37. On November 3, 2025, Oracle Health informed Integris that the Data Breach "involved information relating to INTEGRIS Health patients."[8]

38. The types of information exposed include "name, Social Security number, and information included within patient medical records, such as medical record numbers, doctors,

---

[7] See Notice of Data Breach Letter dated December 30, 2025, attached hereto as Exhibit A.
[8] *Id.*

diagnoses, medicines, test results, images, care and treatment."[9]

39. Due to intentionally obfuscating language and a lack of formal notification, it is unclear how long it took Defendants to discover that they had been subject to a breach and how long cybercriminals had unfettered access to Plaintiffs' and the Class's most sensitive information.

40. In other words, Defendants' cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its patients' highly Private Information. Integris knew or should have known that granting Oracle Health access to Plaintiffs' Private Information would result in a Data Breach given Oracle Health's inadequate cybersecurity practice.

41. Despite their duties and alleged commitments to safeguard Private Information, Defendants do not in fact follow industry standard practices in securing consumers' Private Information, as evidenced by the Data Breach.

42. Oracle Health itself has not sent Data Breach notices to Plaintiffs and Class Members. In fact, it was reported that Oracle Health is telling hospitals that it will not be notifying patients directly and that it is the hospitals' responsibility to determine if the stolen data violates HIPAA laws and whether they are required to send notifications.[10]

---

[9] *Id.*
[10] *See* Bleeping Computer, *Oracle Health breach compromises patient data at US hospitals* https://www.bleepingcomputer.com/news/security/oracle-health-breach-compromises-patient-data-at-us-hospitals/ (last visited January 18, 2026).

43. Furthermore, Defendants have not disclosed to the public that on or around September 21, 2024, a threat actor claimed to have leaked 4,002 rows of employee information from Oracle Health. A copy of the threat actor's post on the dark web is below.[11]




44. Therefore, on information and belief, the Data Breach was effectuated by means of the compromised credentials of Oracle Health's own employees. Integris knew or should have known that granting Oracle Health access to Plaintiffs' Private Information would result in a Data Breach given Oracle Health's inadequate cybersecurity practice.

45. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiffs' and the Class's Private Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiffs' and the Class's financial accounts.

46. On information and belief, Defendants plan to offer several months of complimentary credit monitoring services to victims, which does not adequately address the

---

[11] *See Data Breach Alert, FalconFeeds.io* (Sept. 21, 2024) https://x.com/FalconFeedsio/status/1837507607701098829 (last visited December 30, 2025).

lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Private Information that cannot be changed, such as Social Security numbers.

47. Even with several months' worth of credit monitoring services, the risk of identity theft and unauthorized use of Plaintiffs' and Class Members' Private Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

48. On information and belief, Defendants failed to adequately train and supervise their IT and data security agents and employees on reasonable cybersecurity protocols or implement reasonable security measures, causing them to lose control over their patients' Private Information. Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the Private Information.

***The Data Breach was a Foreseeable Risk of which Defendants were on Notice.***

49. Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry preceding the date of the breach.

50. In light of recent high profile data breaches at other healthcare partner and provider companies, Defendants knew or should have known that their electronic records and customers' Private Information would be targeted by cybercriminals.

51. In 2024, a record 3,158 data breaches occurred—resulting in 1,350,835,988 victim notices (i.e., 211% increase year over year).[12]

52. Indeed, cyberattacks against the healthcare industry have become increasingly common for over ten years, with the FBI warning as early as 2011 that cybercriminals were

---

[12] *2024 Data Breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf.

"advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cyber crime." [13]

53. Cyberattacks on medical systems and healthcare partner and provider companies like Defendants have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive. . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly." [14]

54. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry.

***Plaintiff Brandi Strength's Experience***

55. Plaintiff Brandi Strength is an Integris patient. As a condition of treatment with Integris, Plaintiff provided it with her Private Information including but not limited to her name, Social Security number, and medical information including doctors, diagnosis, medicines, test results, images, care, treatment, and medical record numbers. Integris used that Private Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to obtain treatment and care.

56. Integris shared Plaintiff's Private Information with Oracle Health as part of its provision of services to Integris. In other words, Integris provided Oracle Health with Plaintiff's Private Information.

---

[13] Gordon M. Snow Statement, FBI https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited December 26, 2025).
[14] Secret Service Warn of Targeted, Law360, https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware (last visited December 26, 2025).

57. Plaintiff Strength provided her Private Information to Defendants and trusted that they would use reasonable measures to protect it according to their internal policies and state and federal law.

58. Defendants deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by continuing to fail to notify her promptly.

59. As a result of the Data Breach, Plaintiff has spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

60. Plaintiff Strength has spent and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff Strength fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach.

61. Plaintiff Strength has experienced and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

62. Plaintiff Strength suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendants, which was compromised in and as a result of the Data Breach.

63. Plaintiff Strength has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

64. Specifically, Plaintiff Strength was notified by her banking card provider of an account inquiry that she did not authorize. She further experienced multiple unauthorized charges on her account, including, but not limited to, a $24.99 charge to BLIDZ, Inc. and a $40.06 charge to Uber.

65. Also following the Data Breach, Plaintiff Strength has been experiencing a sharp increase in spam calls and texts, receiving calls daily, further evidence that her Private Information is now in the hands of cyber criminals.

66. Moreover, Plaintiff Strength is experiencing fear and anxiety as a result of the Data Breach. She is concerned that her information is in the possession of someone with malicious intent and will negatively impact her future.

67. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[15] On information and belief, the spam calls and fraudulent charges Plaintiff experienced is a result of the Data Breach.

68. Plaintiff Strength has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

***Plaintiff Christine Abbott's Experience***

69. Plaintiff Christine Abbott is an Integris patient. As a condition of treatment with Integris, Plaintiff provided it with her Private Information including but not limited to her name, Social Security number, and medical information including doctors, diagnosis, medicines, test

---

[15] What do Hackers do with Stolen Information, Aura, https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited January 18, 2026).

results, images, care, treatment, and medical record numbers. Integris used that Private Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to obtain treatment and care.

70. Integris shared Plaintiff's Private Information with Oracle Health as part of its provision of services to Integris. In other words, Integris provided Oracle Health with Plaintiff's Private Information.

71. Plaintiff Abbott provided her Private Information to Defendants and trusted that they would use reasonable measures to protect it according to their internal policies and state and federal law.

72. Defendants deprived Plaintiff Abbott of the earliest opportunity to guard herself against the Data Breach's effects by continuing to fail to notify her promptly.

73. As a result of the Breach, Plaintiff Abbott spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach, self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

74. Plaintiff Abbott has spent and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach.

75. Plaintiff Abbott has experienced and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

76. Plaintiff Abbott suffered actual injury in the form of damages to and diminution in

the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendants, which was compromised in and as a result of the Data Breach.

77. Plaintiff Abbott has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

78. Also following the Data Breach, Plaintiff Abbott has been experiencing a sharp increase in spam calls and texts, receiving calls daily, further evidencing that her Private Information is now in the hands of cyber criminals.

79. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

***Plaintiffs and the Proposed Classes Face Significant Risk of Continued Identity Theft***

80. Plaintiffs and members of the proposed Classes have suffered injury from the misuse of their Private Information that can be directly traced to Defendants.

81. As a result of Defendants' failure to prevent the Data Breach, Plaintiffs and the proposed Class members have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a. The loss of the opportunity to control how their Private Information is used;

b. The diminution in value of their Private Information;

c. The compromise and continuing publication of their Private Information;

d. Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e. Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f. Delay in receipt of tax refund monies;

g. Unauthorized use of stolen Private Information; and

h. The continued risk to their Private Information, which remains in Defendants' possession and is subject to further breaches so long as Defendants fail to undertake the appropriate measures to protect the Private Information in their possession.

82. Stolen Private Information is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII alone can be worth up to $1,000.00 depending on the type of information obtained.

83. The value of Plaintiffs' and the Class's Private Information on the black market is considerable. Stolen Private Information trades on the black market for years, and criminals frequently post stolen Private Information openly and directly on various "dark web" internet websites, making the information publicly available, for a substantial fee of course.

84. It can take victims years to spot identity theft, giving criminals plenty of time to use that information for cash.

85. One such example of criminals using Private Information for profit is the development of "Fullz" packages.

86. Cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers

are known as "Fullz" packages.

87. The development of "Fullz" packages means that stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiffs and the proposed Class' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and members of the proposed Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and the Class's stolen Private Information is being misused, and that such misuse is fairly traceable to the Data Breach.

88. Defendants disclosed the Private Information of Plaintiffs and the Class for criminals to use in the conduct of criminal activity. Specifically, Defendants opened up, disclosed, and exposed the Private Information of Plaintiffs and the Class to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen Private Information.

89. Defendants' failure to properly notify Plaintiffs and members of the Class of the Data Breach exacerbated Plaintiffs' and the Class's injury by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendants Could Have Prevented the Data Breach***

90. Data breaches are preventable.[16] As Lucy Thomson wrote in the Data Breach and Encryption Handbook, "In almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[17] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[18]

91. "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures . . . . Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a data breach never occurs."[19]

92. In a Data Breach like the one here, many failures laid the groundwork for the breach.

***Defendants failed to adhere to FTC guidelines.***

93. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendants, should employ to protect against the unlawful exposure of Private Information.

94. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

---

[16] Lucy L. Thomson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thomson, ed., 2012).
[17] *Id.* at 17.
[18] *Id.* at 28.
[19] *Id.*

a. protect the sensitive consumer information that they keep;

b. properly dispose of Private Information that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

95. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

96. The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

97. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

98. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendants Violated HIPAA***

99. HIPAA circumscribes security provisions and data privacy responsibilities

designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information. [20]

100. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII and PHI is properly maintained.[21]

101. The Data Breach itself resulted from a combination of inadequacies showing Defendants' failure to comply with safeguards mandated by HIPAA. Defendants' security failures include, but are not limited to:

a. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d. Failing to ensure compliance with HIPAA security standards by Defendants in violation of 45 C.F.R. § 164.306(a)(4);

e. Failing to implement technical policies and procedures for electronic information

---

[20] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, inter alia: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[21] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

102. Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendants failed to comply with safeguards mandated by HIPAA regulations.

***Defendants Fail to Comply with Industry Standards***

103. As noted above, experts studying cyber security routinely identify entities in possession of PII and PHI as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

104. Several best practices have been identified that at a minimum should be implemented by providers in possession of PII and PHI, like Defendants, including but not limited

to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data and limiting which employees can access sensitive data. Defendants failed to follow these industry best practices, including a failure to implement multi-factor authentication.

105. Other best cybersecurity practices that are standard for providers include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points. Defendants failed to follow these cybersecurity best practices, including failure to train staff.

106. Upon information and belief, Defendants failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-02) and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

107. These foregoing frameworks are existing and applicable industry standards for a provider's obligations to provide adequate data security for their patients. Upon information and belief, Defendants failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

## CLASS ACTION ALLEGATIONS

108. Plaintiffs bring this class action, under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following classes:

> **Oracle Health Nationwide Class:**
> All individuals residing in the United States whose personal information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.
>
> **Oracle Health Oklahoma Subclass:**
> All individuals residing in Oklahoma whose PII/PHI was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.
>
> **Integris Healthcare Provider Nationwide Subclass:**
> All individuals residing in the United States whose PII/PHI was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by Integris, including those individuals who receive notice of the Data Breach.
>
> **Integris Oklahoma Subclass:**
> All individuals residing in Oklahoma whose PII/PHI was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, whose information was provided to Oracle Health by Integris, including those individuals who receive notice of the Data Breach.

109. Excluded from the Classes are Defendants, their agents, affiliates, parents, subsidiaries, any entity in which Defendants have a controlling interest, any of Defendants' officers or directors, any successors, and any Judge who adjudicates this case, including their staff and immediate family.

110. Plaintiffs reserve the right to amend the class definitions.

111. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

a. **Numerosity.** The class members are so numerous that joinder of all class members is impracticable. Upon information and belief, the proposed Class includes at least 100 members, far too many to join in a single action.

b. **Ascertainability.** All members of the proposed Class are readily identifiable from information in Defendants' custody, and control. After all, Defendants already identified some individuals and sent them Data Breach notices.

c. **Typicality.** Plaintiffs' claims are typical of class claims as each arises from the same Data Breach, the same alleged violations by Defendants, and the same unreasonable manner of notifying individuals about the Data Breach.

d. **Adequacy.** Plaintiffs will fairly and adequately protect the proposed Class's common interests. Their interests do not conflict with the Class's interests, and they have retained counsel-including lead counsel-experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

e. **Commonality and Predominance.** Plaintiffs' and the Class's claims raise predominantly common fact and legal questions-which predominate over any questions affecting individual class members-for which a class wide proceeding can answer for all class members. In fact, a class wide proceeding is necessary to answer the following questions:

   i. If Defendants had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's Private Information;

   ii. If Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

iii. If Defendants were negligent in maintaining, protecting, and securing Private Information;

iv. If Defendants breached contract promises to safeguard Plaintiffs' and the Class's Private Information;

v. If Defendants took reasonable measures to determine the extent of the Data Breach after discovering it;

vi. If Defendants' Breach Notice was reasonable;

vii. If the Data Breach caused Plaintiffs' and the Class's injuries;

viii. What the proper damages measure is; and

ix. If Plaintiffs and the Class are entitled to damages, treble damages, or injunctive relief.

f. **Superiority.** A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversary. The damages or other financial detriment suffered by individual class members are relatively small compared to the burden and expense that individual litigation against Defendants would require. Thus, it would be practically impossible for class members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

112. Further, common questions of law and fact predominate over any individualized questions, and a class action is superior to individual litigation or any other available method.

## FIRST CAUSE OF ACTION
## Negligence
## (On Behalf of Plaintiffs and the Classes)

113. Plaintiffs restate the allegations in Paragraphs 1 through 112 above, as if fully set forth herein.

114. Plaintiffs and the Class entrusted their Private Information to Defendants on the premise and with the understanding that Defendants would safeguard their Private Information, use their Private Information for business purposes only, and/or not disclose their Private Information to unauthorized third parties.

115. Defendants owed a duty of care to Plaintiffs and Class Members because it was foreseeable that Defendants' failure—to use adequate data security in accordance with industry standards for data security—would compromise their Private Information in a data breach. And here, that foreseeable danger came to pass.

116. Defendants have full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiffs and the Class could and would suffer if their Private Information was wrongfully disclosed.

117. Defendants owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendants knew or should have known would suffer injury-in-fact from their inadequate security practices. After all, Defendants actively sought and obtained Plaintiffs' and Class Members' Private Information.

118. Defendants owed—to Plaintiffs and Class Members—at least the following duties to:

a. exercise reasonable care in handling and using the Private Information in their care and custody;

b. implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

c. promptly detect attempts at unauthorized access; and

d. notify Plaintiffs and Class Members within a reasonable timeframe of any breach to the security of their Private Information.

119. Thus, Defendants owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiffs and Class Members to take appropriate measures to protect their Private Information, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

120. Defendants also had a duty to exercise appropriate clearinghouse practices to remove Private Information it was no longer required to retain under applicable regulations.

121. Defendants knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the Private Information of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

122. Defendants' duty to use reasonable security measures arose because of the special relationship that existed between Defendants and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendants with their confidential Private Information, a necessary part of obtaining services from Defendants.

123. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate

computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

124. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect the Private Information entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiffs' and the Class Members' Private Information.

125. Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

126. Similarly, under HIPAA, Defendants had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiffs' and Class Members' PHI.

127. Defendants violated their duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed supra. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of PHI that Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

128. The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendants hold vast amounts of Private

Information, it was inevitable that unauthorized individuals would attempt to access Defendants' databases containing the Private Information —whether by malware or otherwise.

129. Private Information is highly valuable, and Defendants knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiffs and Class Members' and the importance of exercising reasonable care in handling it.

130. Defendants improperly and inadequately safeguarded the Private Information of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

131. Defendants breached these duties as evidenced by the Data Breach.

132. Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and Class Members' Private Information by:

a. disclosing and providing access to this information to third parties and

b. failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

133. Defendants breached their duties by failing to exercise reasonable care in supervising their agents, contractors, vendors, and suppliers, and in handling and securing the personal information and Private Information of Plaintiffs and Class Members which actually and proximately caused the Data Breach and Plaintiffs' and Class Members' injury.

134. Defendants further breached their duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs' and Class Members' injuries-in-fact.

135. Defendants have admitted that the Private Information of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

136. As a direct and traceable result of Defendants' negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

137. And, on information and belief, Plaintiffs' Private Information has already been published—or will be published imminently—by cybercriminals on the dark web.

138. Defendants' breach of their common-law duties to exercise reasonable care and their failures and negligence actually and proximately caused Plaintiffs and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendants' negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

## <u>SECOND CAUSE OF ACTION</u>
**Negligence *per se***
**(On behalf of Plaintiffs and the Classes)**

139. Plaintiffs restate the allegations in Paragraphs 1 through 112 above, as if fully set forth herein.

140. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' PII/PHI.

141. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce,"

including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendants, of failing to use reasonable measures to protect the PII/PHI entrusted to it. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiffs and the Class members' sensitive PII/PHI.

142. Defendants breached their respective duties to Plaintiffs and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII/PHI.

143. Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of PII/PHI Defendants had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

144. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and members of the Class.

145. Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and their patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendants were in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a Data Breach.

146. Defendants' duty to use reasonable security measures under HIPAA required

Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

147. Defendants violated their duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed supra. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

148. But for Defendants' wrongful and negligent breach of their duties owed, Plaintiffs and Class members would not have been injured.

149. The injury and harm suffered by Plaintiffs and Class members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that Defendants were failing to meet their duties and that their breach would cause Plaintiffs and members of the Class to suffer the foreseeable harms associated with the exposure of their PII/PHI.

150. Defendants' various violations and their failure to comply with applicable laws and regulations constitutes negligence *per se*.

151. As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## THIRD CAUSE OF ACTION
**Breach of an Implied Contract**
**(Against Defendant Integris on Behalf of Plaintiffs and the Subclasses)**

152. Plaintiffs restate the allegations in Paragraphs 1 through 112 above, as if fully set forth herein.

153. Plaintiffs and the Class delivered their Private Information to Integris as part of the process of obtaining treatment and services provided by Integris.

154. Plaintiffs and Class Members entered into implied contracts with Integris under which Defendants agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class Members if and when their data had been breached and compromised. This contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendants was required to perform its obligations and manage Plaintiffs' and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Integris.

155. In providing their Private Information, Plaintiffs and Class Members entered into an implied contract with Integris whereby Integris, in receiving such data, became obligated to reasonably safeguard Plaintiffs' and the other Class Members' Private Information.

156. In delivering their Private Information to Integris, Plaintiffs and Class Members intended and understood that Integris would adequately safeguard that data.

157. Plaintiffs and the Class Members would not have entrusted their Private Information to Integris in the absence of such an implied contract.

158. Integris accepted possession of Plaintiffs' and Class Members' Private Information.

159. Had Defendant Integris disclosed to Plaintiffs and Class Members that Defendants did not have adequate computer systems and security practices to secure consumers' Private Information, Plaintiffs and members of the Class would not have provided their Private

Information to Defendants.

160. Integris recognized that consumers' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiffs and Class Members.

161. Plaintiffs and Class Members fully performed their obligations under the implied contracts with Integris.

162. Integris breached the implied contract with Plaintiffs and Class Members by failing to take reasonable measures to safeguard its data.

163. Integris breached the implied contract with Plaintiffs and Class Members by failing to promptly notify them of the access to and exfiltration of their Private Information.

164. As a direct and proximate result of the breach of the contractual duties, Plaintiffs and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiffs and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiffs' and Class Members' Private Information; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their Private Information; (g) the diminution in the value of the services bargained for as Plaintiffs and Class Members were deprived of the data protection and security that Defendants promised when Plaintiffs and the proposed class entrusted Defendants with their Private Information; and (h) the continued and substantial risk to Plaintiffs' and Class Members' Private Information, which remains in the Integris's possession with inadequate measures to

protect Plaintiffs' and Class Members' Private Information.

## FOURTH CAUSE OF ACTION
**Breach of Third-Party Beneficiary Contract**
**(Against Oracle Health on Behalf of Plaintiffs and the Classes)**

165. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

166. Plaintiffs restate the allegations in Paragraphs 1 through 112 above, as if fully set forth herein.

167. Defendant Oracle Health entered into various contracts with its affiliated organizations and hospitals, including Integris, to provide electronic health record management services to them.

168. These contracts are virtually identical to each other and were made expressly for the benefit of Plaintiffs and the Class, as it was their confidential medical information that Defendant Oracle Health agreed to collect and protect through its services. Thus, the benefit of collection and protection of the Private Information belonging to Plaintiffs and the Class were the direct and primary objective of the contracting parties.

169. Defendant Oracle Health knew that if it were to breach these contracts with its healthcare provider clients, the clients' patients, including Plaintiffs and the Class, would be harmed by, among other things, fraudulent misuse of their Private Information.

170. Defendant Oracle Health breached its contracts with its clients when it failed to use

reasonable data security measures that could have prevented the Data Breach and resulting compromise of Plaintiffs' and Class Members' Private Information.

171. As a reasonably foreseeable result of the breach, Plaintiffs and the Class were harmed by Defendant Oracle Health's failure to use reasonable data security measures to store their Private Information, including but not limited to, the actual harm through the loss of their Private Information to cybercriminals.

172. Accordingly, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial, along with their costs and attorney fees incurred in this action.

## FIFTH CAUSE OF ACTION
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiffs and the Classes)**

173. Plaintiffs restate the allegations in Paragraphs 1 through 112 above, as if fully set forth herein.

174. Given the relationship between Defendants and Plaintiffs and Class members, where Defendants became guardian of Plaintiffs' and Class members' Private Information, Defendants became a fiduciary by the undertaking and guardianship of the Private Information, to act primarily for Plaintiffs and Class members, (1) for the safeguarding of Plaintiffs' and Class members' Private Information; (2) to timely notify Plaintiffs and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendants did and does store.

175. Defendants had a fiduciary duty to act for the benefit of Plaintiffs and Class members upon matters within the scope of Defendants' relationship with them—especially to secure their PII/PHI.

176. Because of the highly sensitive nature of the Private Information, Plaintiffs and Class members would not have entrusted Defendants, or anyone in Defendants' position, to retain

their Private Information had they known the reality of Defendants' inadequate data security practices.

177. Defendants breached their fiduciary duties to Plaintiffs and Class members by failing to sufficiently encrypt or otherwise protect Plaintiffs' and Class members' Private Information.

178. Defendants also breached their fiduciary duties to Plaintiffs and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

179. As a direct and proximate result of Defendants' breach of its fiduciary duties, Plaintiffs and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## SIXTH CAUSE OF ACTION
**Unjust Enrichment**
**(Against Defendants on Behalf of Plaintiffs and the Classes)**

180. Plaintiffs restate the allegations in Paragraphs 1 through 112 above, as if fully set forth herein.

181. This claim is pleaded in the alternative to the breach of implied contractual duty claim.

182. Plaintiffs and members of the Class conferred a benefit upon Defendants in providing the Private Information to Defendants.

183. Defendants appreciated or had knowledge of the benefits conferred upon them by Plaintiffs and the Class. Defendants also benefited from the receipt of Plaintiffs' and the Class's Private Information, as this was used to facilitate the treatment, services, and goods they sold to Plaintiffs and the Class.

184. Under principals of equity and good conscience, Defendants should not be permitted to retain the full value of Plaintiffs' and the Class's Private Information because Defendants failed to adequately protect their Private Information. Plaintiffs and the proposed Class would not have provided their Private Information to Defendants had they known Defendants would not adequately protect their Private Information.

185. Defendants should be compelled to disgorge into a common fund for the benefit of Plaintiffs and members of the Class all unlawful or inequitable proceeds received by them because of their misconduct and Data Breach.

## SEVENTH CAUSE OF ACTION
**Breach of Confidence**
**(On behalf of Plaintiffs and the Classes)**

186. Plaintiffs restate the allegations in Paragraphs 1 through 112 above, as if fully set forth herein.

187. Plaintiffs and Class members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by Defendants and ultimately accessed and acquired in the Data Breach.

188. As healthcare service providers, Defendants have a special relationship with their patients, including Plaintiffs and Class members. Because of that special relationship, Defendants were provided with and stored Plaintiffs' and Class members' Private Information and had a duty to maintain such Information in confidence.

189. Patients like Plaintiffs and Class members have a privacy interest in personal medical and other matters, and Defendants had a duty not to disclose such matters concerning their patients.

190. As a result of the parties' relationship, Defendants had possession and knowledge

of highly sensitive and confidential Private Information belonging to Plaintiffs and the Class members, information that was not generally known.

191. Plaintiffs and the Class members did not consent nor authorize Defendants to release or disclose their Private Information to an unknown criminal actor.

192. Defendants breached their duty of confidence owed to Plaintiffs and the Class members by, among other things: (a) mismanaging their computer systems and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of patient information that resulted in the unauthorized access and compromise of Plaintiffs' and Class members' Private Information; (b) mishandling their data security by failing to assess the sufficiency of their safeguards in place to control these risks; (c) failing to design and implement adequate information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust their information security program in light of the circumstances alleged herein; (f) failing to detect the Data Breach at the time it began or within a reasonable time thereafter; (g) failing to follow their own privacy policies and practices published to their patients; and (h) making an unauthorized and unjustified disclosure and release of Plaintiffs' and Class members' Private Information to a criminal third party.

193. But for Defendants' wrongful breach of their duty of confidence owed to Plaintiffs and Class members, their Private Information would not have been compromised.

194. As a direct and proximate result of Defendants' wrongful breach of their duty of confidence, Plaintiffs and the Class members have suffered and will continue to suffer the injuries and damages alleged herein.

195. It would be inequitable for Defendants to retain the benefit of controlling and

maintaining Plaintiffs' and Class members' Private Information at the expense of Plaintiffs and the Class members.

196. Plaintiffs and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

**EIGHTH CAUSE OF ACTION**
**Invasion of Privacy**
**(On behalf of Plaintiffs and the Classes)**

197. Plaintiffs restate the allegations in Paragraphs 1 through 112 above, as if fully set forth herein.

198. Plaintiffs and the Class members had a reasonable expectation of privacy in the Private Information Defendants mishandled.

199. As a result of Defendants' conduct, publicity was given to Plaintiffs' and Class members' Private Information, which necessarily includes matters concerning their private life.

200. A reasonable person of ordinary sensibilities would consider the publication of Plaintiffs' and the Class members' Private Information to be highly offensive.

201. Plaintiffs' and the Class members' Private Information is not of legitimate public concern and should remain private.

202. As a direct and proximate result of Defendants' public disclosure of private facts, Plaintiffs and the Class members are at a current and ongoing risk of identity theft and sustained injuries and damages as alleged herein.

203. Plaintiffs and the Class members are entitled to compensatory, consequential and nominal damages suffered as a result of the Data Breach.

204. Plaintiffs and the Class members are also entitled to injunctive relief requiring

Defendants to, inter alia, (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate identity protection and credit monitoring services to all Class members.

**NINTH CAUSE OF ACTION**
**Declaratory Judgment**
**(On behalf of Plaintiffs and the Classes)**

205. Plaintiffs restate the allegations in Paragraphs 1 through 112 above, as if fully set forth herein.

206. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

207. As a result of the Data Breach, an actual controversy has arisen about Defendants' various duties to use reasonable data security. On information and belief, Plaintiffs and the Class allege that Defendants' actions were—and still are—inadequate and unreasonable. And Plaintiffs and the Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

208. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. Defendants owed—and continue to owe—a legal duty to use reasonable data security to secure the data entrusted to them;

b. Defendants have a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

c. Defendants breached, and continue to breach, their duties by failing to use

reasonable measures to protect the data entrusted to them; and

d. Defendants' breaches of their duties caused—and continue to cause—injuries to Plaintiffs and Class members.

209. The Court should also issue corresponding injunctive relief requiring Defendants to use adequate security consistent with industry standards to protect the data entrusted to them.

210. If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendants experience a second data breach.

211. And if a second breach occurs, Plaintiffs and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full, and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiffs' and Class members' injuries.

212. If an injunction is not issued, the resulting hardship to Plaintiffs and the Class members far exceed the minimal hardship that Defendants could experience if an injunction is issued. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiffs, Class members, and the public at large.

## PRAYER FOR RELIEF

Plaintiffs and the Class demand a jury trial on all claims so triable and request that the Court enter an order:

A. Certifying this case as a class action on behalf of Plaintiffs and the proposed Classes, appointing Plaintiffs as class representatives, and appointing their counsel to represent the Class;

B. Awarding declaratory and other equitable relief as is necessary to protect the

interests of Plaintiffs and the Classes;

C. Awarding injunctive relief as is necessary to protect the interests of Plaintiffs and the Classes;

D. Enjoining Defendants from further deceptive practices and making untrue statements about the Data Breach and the stolen Private Information;

E. Awarding Plaintiffs and the Classes damages that include applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

F. Awarding restitution and damages to Plaintiffs and the Classes in an amount to be determined at trial;

G. Awarding attorneys' fees and costs, as allowed by law;

H. Awarding prejudgment and post-judgment interest, as provided by law;

I. Granting Plaintiffs and the Classes leave to amend this complaint to conform to the evidence produced at trial; and

J. Granting such other or further relief as may be appropriate under the circumstances.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand that this matter be tried before a jury.

Date: January 26, 2026

Respectfully submitted,

By: */s/ Matthew D. Alison*
Matthew D. Alison, OBA No. 32723
**INDIAN & ENVIRONMENTAL LAW GROUP, PLLC**
233 S. Detroit Ave. STE 200

Tulsa, OK 74120
(918) 347-6169
(918) 948-6190 (facsimile)
matthew@iaelaw.com

Lynn A. Toops*
Amina A. Thomas*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
(317) 636-6481
(317) 636-2593 (facsimile)
ltoops@cohenmalad.com
athomas@cohenmalad.com

Thomas E. Loeser*
**COTCHETT, PITRE & McCARTHY LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
(206) 802-1272
tloeser@cpmlegal.com

Norman E. Siegel*
Barrett J. Vahle*
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64113
Tel: (816) 714-7112
siegel@stuevesiegel.com
vahle@stuevesiegel.com

Tyler W. Hudson*
**WAGSTAFF & CARTMELL, LLP**
4740 Grand Ave., Suite #300
Kansas City, MO 64112
(816) 701-1100
(816) 531-2372 (facsimile)
thudson@wcllp.com

* *Pro hac vice forthcoming*

*Attorneys for Plaintiffs and Proposed Class*